[Cite as *State v. Triplett*, 2013-Ohio-3114.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012CA00200 |
| JAMIE TRIPLETT, JR. | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
                             Court of Common Pleas, Case No. 2012-
                             CR-0622

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      July 15, 2013

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOHN D. FERRERO
BY:KATHLEEN TATARSKY                    ANTHONY KAPLANIS
110 Central Plaza South, Ste. 510       701 Courtyard Centre
Canton, OH 44702-1413                   116 Cleveland Avenue N.W.
                                        Canton, OH 44702

*Gwin, P.J.*

{¶1} Defendant-appellant Jamie Triplett, Jr. ["Triplett"] appeals his convictions and sentences entered by the Stark County Court of Common Pleas on one count of rape, one count of kidnapping and one count of assault. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} On Monday, March 19, 2012 around 12:00 pm, Amanda Tolley, saw a car pull up to the home of Patricia Eddy in Canton, Ohio. Triplett drove the car and in the passenger seat was A.K. Tolley saw having a conversation with Triplett, get out of the car, walk through the gates and enter the Eddy home.

{¶3} Once inside, A.K. fell to the ground in the middle of the floor crying hysterically and could hardly talk. A.K. was covered in bruises. She had marks on her elbow, a bruise on one of her arms and side of her face. In addition, A.K.'s ear was black and blue, she had a gash on her forehead and her legs were scraped. A.K. told her friends, Tolley and Eddy, that Triplett beat her up, raped her, kept her in the house and would not let her leave. She tried to use her cell phone, but Triplett took the battery out. A.K. was afraid to call the police, but did call her parents.

{¶4} A.K. was taken to Aultman Hospital. She was first seen by a doctor. Kimberly Heffner, a registered nurse trained as a sexual assault nurse examiner ["S.A.N.E."] was the next to see A.K. A.K. disclosed that Triplett grabbed her while she was walking on the street, ripped her shirt and necklace, took her to his dad's work, grabbed her by the hair and threatened to kill her. A.K. told Heffner that Triplett hit her in

the head, choked her, punched her in the face and threatened her and her family. The next day, he apologized for attacking her and then forced her to have vaginal sex.

{¶5} Heffner examined A.K. further. Heffner observed a "lot of injury" and a "lot of bruises."' A.K. observed bruises on the neck that looked like they were caused by choking, marks under the forehead and both eyes, bruising on the cartilage of an ear, bruising on the left side of the face and jaw, bruising on the arms, elbows, hand and legs, marks on her stomach, back, shoulders and a big red mark on the back of her head.

{¶6} Heffner took samples of A.K.'s fingernail clippings, blood, saliva, specimens from her vagina, the inside of both cheeks, a strand of head hair and pubic hair and developed a sexual assault kit. The kit was given to the Canton Police Department who turned it over to Kylie Graham of the Stark County Crime Laboratory.

{¶7} Graham examined the contents of A.K.'s sexual assault kit including the fluid taken from the vaginal area, semen, blood and saliva. She found the presence of seminal fluid on the vaginal swabs. Graham then compared the sperm found in the sexual assault kit with Triplett's DNA standard. Graham found that the source of the semen in A.K.'s sexual assault kit was Triplett.

{¶8} A.K., five feet one and weighing 110 pounds, testified to the events that started on the evening of March 16, 2012. A.K. testified that she and Triplett went to the home of Steven Moreland and Crystal Franklin to play cards and drink. A.K. went outside to take a phone call regarding her daughter and Triplett came out angry. A.K. started walking down the street to the gas station to call her parents and Triplett came after her, calling her names and ripped her shirt. During the fight, Triplett's gold chain

necklace was broken and Triplett blamed A.K., saying he was going to kill her if she did not pay him for it. Triplett told her to get in the car and he took her to his father's semi truck shop. There, he hit her with a long stick, dragged her across the lot and chained her to a truck bumper.

{¶9} Triplett drove around the city with A.K. in the passenger seat trying to find his chain. When she tried to jump out, he grabbed her by the throat. A.K. remembered stopping at the house of a friend of Triplett's named Jack. Triplett went inside while A.K. remained outside the fence in the car. Instead of running away or to a neighbor to call for help, A.K. ran inside the fence. A.K. asked to use the phone, but Jack refused and pushed her out of his yard. Triplett drove to a Speedway station and finally after several hours drove to his home. Triplett told her he was going to hold her hostage until he got the money for the chain.

{¶10} The next morning, Triplett held A.K. down by her arms and had sexual intercourse with her telling her "whether you like it or not, I'm taking it." He held her arms down and covered her mouth because A.K. was screaming and telling him no. Triplett kept her in the house Saturday and Sunday. Sunday morning, he took her upstairs and raped her again.

{¶11} The next morning, Monday, Triplett apologized and said he did not remember a "lot of things" He asked her not to "turn him in or go to the police about it." A.K. assured him she would not "tell on him" and asked to take a shower.

{¶12} A.K. was dropped off at Eddy's house and promised to call him later. Triplett returned her cell phone without a battery.

{¶13} Triplett was arrested about a month after the attack on A.K. and housed in the Stark County Jail awaiting trial. He was placed in the general dormitory area with George Swogger, a self described "low level" criminal." Triplett freely talked about his case and told Swogger that he got into an argument with A.K. when she ripped his chain off. He got in the car - a Camaro - forced A.K. into the car and "then took her to different locations around the city and beat her up." He bragged about taking her to his father's place and chaining her to a bumper. When he took her to his home, he made her have sex with him.

{¶14} Steven Moreland and Crystal Franklin  both testified that A.K. willingly got into Triplett's car and refused their offer for a ride.  Both Steve and Crystal indicated they saw her the next day with Triplett at his father's company. They both said nothing seemed wrong and in fact, Crystal testified while Triplett was inside A.K. was texting on her phone.

{¶15} Evidence was presented that surveillance video taken while A.K. and Triplett were at the Speedway station showed Triplett get out of the car. The video also showed a vehicle next to their car in the parking lot. The video did not give any indication of something being wrong, such as calls for help.

{¶16} Robert Blymiller testified that A.K. and Triplett came to his house and nothing seemed wrong. Blymiller and Triplett left the home to go to the store, while A.K. remained behind with Blymiller's wife.

{¶17} The Stark County Grand Jury indicted Triplett on one count of rape, a violation of R.C. 2907.02(A)(2) [F1], two counts of kidnapping, a violation of R.C. 2905.01(A)(3) [F1] and one count of felonious assault, a violation of R.C. 2903.11(A)(1)

and/or (A)(2) [F2]. The two counts of kidnapping contained a sexual motivation specification, R.C. 2941.147.

**{¶18}** After hearing the evidence and receiving instructions from the trial court, the jury returned a mixed verdict as follows: Guilty of counts one and two, rape and kidnapping but not guilty of the sexual motivation specification; not guilty of count three, kidnapping; not guilty of felonious assault but guilty of assault.

**{¶19}** Triplett returned to the trial court for sentencing on September 24, 2012. The state argued that the rape and kidnapping should not merge and the trial court agreed. Triplett was sentenced to ten years on the kidnapping conviction, ten years on the rape conviction and 180 days on the assault conviction for an aggregated prison term of twenty years.

*Assignments of Error*

**{¶20}** Triplett raises three assignments of error,

**{¶21}** "I. THE TRIAL COURT ERRED IN PERMITTING HEARSAY TESTIMONY UNDER THE EXCITED UTTERANCE EXCEPTION.

**{¶22}** "II. THE TRIAL COURT'S FINDING OF GUILTY OF KIDNAPPING, RAPE AND ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

**{¶23}** "III. THE TRIAL COURT ERRED BY FAILING TO MERGE APPELLANT'S CONVICTIONS AND SENTENCES FOR KIDNAPPING AND RAPE WHEN THE CONVICTIONS RESULTED FORM THE SAME TRANSACTION."

I.

**{¶24}** In his first assignment of error, Triplett contends that A.K.'s statements to Tolley and Eddy made three days after A.K. claimed she was kidnapped should not have been admitted at trial as excited utterances.

**{¶25}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383(1987).

> The hearsay rule ... is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements-the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine-are generally absent for things said out of court.

*Williamson v. United States*, 512 U.S. 594, 598,114 S.Ct. 2431, 129 L.Ed.2d 476(1994).

**{¶26}** An excited utterance is one in which the declarant was under the excitement of a startling event and, therefore, the statement was not the product of reflection. *State v. Taylor*, 66 Ohio St.3d 295, 300, 612 N.E.2d 316, 320(1993). For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) an

event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. *Potter v. Baker,* 162 Ohio St. 488, 124 N.E.2d 140 (1955), paragraph two of the syllabus, *followed and approved in State v. Taylor,* 66 Ohio St.3d 295, 612 N.E. 2d 316 (1993), fn. 2; *State v. Duncan*, 53 Ohio St.2d 215, 373 N.E.2d 1234(1978). In *Duncan,* the Ohio Supreme Court emphasized, " * * * an appellate court should allow wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event." *Id.* at 219.

{¶27} "There is no per se amount of time between the [occurrence and the statement] after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought. Therefore the passage of time between the statement and the event is relevant but not dispositive of the question." *Taylor* at 303, 612 N.E.2d at 322. The fact the statements were not contemporaneous with the incident does not take it out of the excited utterance exception. *State v. Baker*, 137 Ohio App.3d 628, 739 N.E.2d 819(12th Dist. 2000), quoting *Warfield v. Greater Cleveland Regional Transit Auth.* (July 7, 1988), 8th Dist. No. 54023, 1988 WL 87653.

{¶28} The admission of a declaration as an excited utterance is not precluded by questioning which is neither coercive nor leading, which facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and does not

destroy the domination of the nervous excitement over the declarant's reflective faculties. *State v. Wallace*, 37 Ohio St.3d 87, 524 N.E.2d 466(1988), paragraph 2 of the syllabus; *State v. Green,* 5th Dist. No. 01 CA-A-12-067, 2002-Ohio-3949, ¶37.

{¶29} In the case at bar, Triplett claims that because the witnesses testified A.K. had calmed down and then was asked by the witnesses what happened, A.K. was not under the stress and excitement of the startling event and thus her statements were not permitted as excited utterances.

{¶30} The statements A.K. made to Tolley and Eddy when she was dropped off at Eddy's home three days after she was kidnapped were admissible under the excited utterance exception to the hearsay rule. A.K. was crying and so hysterical that she could barely talk. She told Tolley and Eddy that she was beaten and raped by Triplett after he threw her into the car on the previous Friday or early morning hours of Saturday. A.K. was visibly shaken and upset. Further, A.K. did testify and was cross-examined concerning her statements.

{¶31} In addition, even if error occurred in the admission of the statements, it was harmless. We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78, citing *Chapman; State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the

syllabus, *vacated in part on other grounds Lytle v. Ohio,* 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978).

**{¶32}** Kimberly Heffner, the S.A.N.E. nurse-examiner related the same information to the jury concerning A.K.'s description of the Triplett's actions during the kidnapping and sexual assault. Therefore, other properly admitted evidence established the same information.

**{¶33}** Because we find there is no reasonable possibility that testimony cited as error by Triplett contributed to his convictions, any error is harmless. *State v. Owens,* 5th Dist. No. 2009-CA-00223, 2010-Ohio-4240, ¶38.

**{¶34}** Triplett's first assignment of error is overruled.

II.

**{¶35}** In his second assignment of error, Triplett contends that his conviction is against the sufficiency and the weight of the evidence.

**{¶36}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶37}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

**{¶38}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶39}** If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 274, 574 N.E.2d 492(1991) at paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668(1997).* Circumstantial evidence and direct evidence inherently possess the same probative value. Id.

**{¶40}** Furthermore,

"[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt' *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be

based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott* (1990), 1 Ohio St.3d 160, 168, 555 N.E.2d 293, citing *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case.

*Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820(1955).

**{¶41}** Triplett was convicted of rape in violation of R. C. 2907.02(A)(2) which prohibits any person from engaging in sexual conduct with another "when the offender purposely compels the other person to submit by force or threat of force."

**{¶42}** In this case, A.K. testified that she did not consent to vaginal sexual intercourse with Triplett, that after he beat her up and refused to release her by lying on top of her, he removed her pants and underwear and held her arms up while he inserted his penis into her vagina. A.K. testified that she was afraid he would beat her up further.

**{¶43}** "Corroboration of victim testimony in rape cases is not required. *See State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson*, 112 Ohio St .3d 210, 217, 2006-Ohio-6404, 858 N.E.2d 1144,¶53.

**{¶44}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Triplett had committed the crime of rape.

**{¶45}** We hold, therefore, that the state met its burden of production regarding each element of the crime of rape and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Triplett's conviction.

**{¶46}** Triplett was also found guilty of kidnapping. R. C. 2905.01(A)(3), provides, in relevant part,

No person, by force, threat, or deception ...shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

* * *

(3) To terrorize, or to inflict serious physical harm on the victim of another

* * *

(C)(1) Whoever violates this section is guilty of kidnapping. Except as otherwise provided in this division or division (C)(2) or (3) of this section, if an offender who violates division (A)(1) to (5), (B)(a) or (B)(2) of this section releases the victim in a safe place unharmed, kidnapping is a felony of the second degree.

**{¶47}** In the case at bar, A.K. testified Triplett told her to get in the car and he took her to his father's semi truck shop. There, he hit her with a long stick, dragged her across the lot and chained her to a truck bumper. Triplett then drove around the city with A.K. in the passenger seat trying to find his chain. When she tried to jump out, he grabbed her by the throat. A.K. further testified Triplett drove to a Speedway station and finally after several hours drove to his home. Triplett told her he was going to hold her hostage until he got the money for the chain.

**{¶48}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Triplett had committed the crime of kidnapping.

**{¶49}** We hold, therefore, that the state met its burden of production regarding each element of the crime of kidnapping and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Triplett's conviction.

**{¶50}** Triplett does not challenge his conviction for assault on appeal. Triplett conceded at trial that he was guilty of this crime.

**{¶51}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of

witnesses. See, e.g., *In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass,* 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

**{¶52}** Although Triplett cross-examined the victim and the other state witnesses regarding inconsistencies in, and the vagueness of, their testimony and further argued that no forensic or expert evidence supported the allegations, the jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness' credibility.

**{¶53}** We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that Triplett had committed the crimes of rape and kidnapping. We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983)*.* The jury neither lost his way nor created a miscarriage of justice in convicting Triplett of the charges.

**{¶54}** Based upon the foregoing and the entire record in this matter, we find Triplett's convictions were not against the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before it. The jury as the trier of fact can reach different conclusions concerning the credibility of the testimony of Triplett and A.K. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378

N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Triplett's guilt.

{¶55} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes beyond a reasonable doubt.

{¶56} Triplett's second assignment of error is overruled.

III.

{¶57} In his third assignment of error, Triplett argues that the trial court erred by not merging the convictions for kidnapping and rape for purposes of sentencing pursuant to R.C. 2941.25.

{¶58} R.C. 2941.25, Multiple counts states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶59} In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court revised its allied-offense jurisprudence. The *Johnson*

court overruled *State v. Rance,* 85 Ohio St.3d 632, 710 N.E.2d 699(1999), "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." The Court was unanimous in its judgment and the syllabus, "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)" However, the Court could not agree on how the courts should apply that syllabus holding. The *Johnson* case lacks a majority opinion, containing instead two plurality opinions, and a separate concurrence in the judgment and syllabus only. *State v. Helms*, 7th Dist. No. 08 MA 199, 2012-Ohio-1147, ¶71 (DeGenaro, J., concurring in part and dissenting in part).

{¶60} Justice Brown's plurality opinion sets forth a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25. The first inquiry focuses on whether it is possible to commit both offenses with the same conduct. Id. at ¶ 48, 710 N.E.2d 699. It is not necessary that the commission of one offense will *always* result in the commission of the other. Id. Rather, the question is whether it is *possible* for both offenses to be committed by the same conduct. Id.*,* quoting *State v. Blankenship*, 38 Ohio St.3d 116, 119, 526 N.E.2d 816(1988). Conversely, if the commission of one offense will *never* result in the commission of the other, the offenses will not merge. *Johnson* at ¶ 51.

{¶61} If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by a single act, performed with a single state of mind. Id. at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 895 N.E.2d 149, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., concurring in

judgment only). If so, the offenses are allied offenses of similar import and must be merged. *Johnson* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. Id. at ¶ 51.

**{¶62}** Under Justice Brown's plurality opinion in Johnson, "the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." Id. at ¶ 47, 942 N.E. 2d 1061. Rather, the court simply must ask whether the defendant committed the offenses by the same conduct. *Id.*

**{¶63}** In *State v. Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345(1979), syllabus, the Court set forth the following test to determine what constitutes a separate animus for kidnapping and a related offense. Specifically, the Court stated:

In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from

that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

**{¶64}** In the case at bar, Triplett restrained A.K. because she broke his chain necklace and he wanted it replaced. Triplett then drove to different locations in an attempt to find the chain. A.K. was unable to leave. She was beaten and restrained at the business premises of Triplett's father. After returning home, Triplett fell asleep on top of A.K. The pair left the home a second time to look for the necklace. After returning home, Triplett again fell asleep on top of A.K. The rape occurred sometime the next morning.

**{¶65}** Under R.C. 2941.25(B), "animus" is defined as "purpose or, more properly, immediate motive." *State v. Logan,* 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). If the defendant acted with the same purpose, intent, or motive, the animus is identical for the offenses. *State v. Lewis,* 12th Dist. No. CA2008–10–045, 2012–Ohio–885, ¶ 13.

**{¶66}** The O'Donnell concurrence in *Johnson* utilized the following illustration,

Consider the crimes of rape and kidnapping, for example. The elements of each are different. Rape, as defined in R.C. 2907.02(A)(2), is committed when a defendant engages in sexual conduct with another and the defendant purposefully compels the other person to submit by force or threat of force. Kidnapping, as defined in R.C. 2905.01(A)(4), is committed when by force, threat, or deception, or, in the case of a victim under the age of 13 or mentally incompetent, by any means, a defendant removes another from the place where the other person is found or restrains the

liberty of the other with the purpose to engage in sexual activity with the victim against the victim's will.

Inevitably, every rapist necessarily kidnaps the victim, because the conduct of engaging in sexual conduct by force results in a restraint of the victim's liberty. Thus, in those circumstances, the conduct of the defendant can be construed to constitute two offenses—rape and kidnapping—and an indictment may contain counts for each, but the defendant may be convicted of only one.

In a different factual situation, however, if the state presented evidence that a defendant lured a victim to his home by deception, for example, and then raped that victim, an indictment may contain separate counts for the rape and for the kidnapping. In this hypothetical, *different* conduct—the luring of the victim by deception and the separate act of rape—results in two offenses being committed separately; therefore, the indictments may contain counts for both offenses and the defendant may be convicted of both. See, e.g., *State v. Ware* (1980), 63 Ohio St.2d 84, 17 O.O.3d 51, 406 N.E.2d 1112 (the defendant could be convicted of both kidnapping and rape because he lured the victim to his home by deception before raping her).

*State v. Johnson*, 128 Ohio St.3d at ¶81-81(O'Donnell concurring in judgment and syllabus)(Footnotes omitted). See, *State v. Pore*, 5th Dist. No. 2011-CA-00190, 2012-Ohio-3660, ¶27.

**{¶67}** In the case at bar, the immediate purpose of Triplett's forcing A.K. into his car was in response to the loss of his gold chain. This separate act was not committed with the purpose to engage in sexual activity with the victim against the victim's will. The different conduct results in two offenses being committed separately. Under the facts at bar, we conclude that there was an act of asportation by force which constituted kidnapping, and which was significantly independent from the restraint incidental to the rape itself. The two crimes were committed separately.

**{¶68}** Accordingly, Triplett's third assignment of error is overruled.

{¶69} For the reasons stated in this opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. PATRICIA A. DELANEY


WSG:clw 0611

[Cite as *State v. Triplett*, 2013-Ohio-3114.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| JAMIE TRIPLETT, JR. | : | |
| | : | |
| Defendant-Appellant: | | CASE NO. 2012CA00200 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. PATRICIA A. DELANEY