[Cite as *State v. Barnett*, 2019-Ohio-3944.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 19AP010007 |
| | : | |
| JAMES M. BARNETT | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the New Philadelphia
Municipal Court, Case No. CRB
1801492

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: September 26, 2019

APPEARANCES:

For Plaintiff-Appellee:

LACEE K. FELIX
New Philadelphia Asst. Prosecutor
150 East High Ave., Suite 113
New Philadelphia, OH 44663

For Defendant-Appellant:

DAVID BLACKWELL
3405 Curtis Road SE
New Philadelphia, OH 44663

*Delaney, J.*

{¶1} Appellant James M. Barnett appeals from the December 18, 2018 Judgment Entry: Sentence Imposed after Guilty Verdict of the New Philadelphia Municipal Court. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose on November 10, 2018, around 5:28 a.m., when Jane Doe called the New Philadelphia Police Department to state that she needed an officer at her residence. Officers were thereupon dispatched to the residence for a domestic dispute.

{¶3} The dispatcher testified at trial, over objection, to Jane Doe's statements in the call. Doe said she needed police right away and gave her address; the dispatcher asked her name and what was going on; and Doe said her live-in boyfriend—appellant-- "put her up against the wall by her neck." The dispatcher intended to keep Doe on the phone until police arrived, but Doe said she had to hang up before appellant "caught" her on the phone.

{¶4} Ptl. Dorsey was one of the officers dispatched to the residence. Upon his arrival, he heard yelling inside and knocked on the front door. A woman came to the door with a man following closely behind her; the man slammed the door shut in Dorsey's face. He knocked again and the woman opened the door; as Dorsey testified, she was again "shoved out of the door by a male subject who yelled explicit words in [his] direction," including "fuck you, this is my house, get out."

{¶5} Meanwhile, the woman was screaming that her babies were still in the house, that appellant was going to hurt or kill them, and begging police to get the children

out of the house. Dorsey described Jane Doe as tearful, afraid, screaming, shaking, and seemingly afraid for her life and her children.

{¶6} Another officer, Ptl. Kelley, pulled Jane Doe out of the house and took her onto the porch to talk further. Kelley was the arresting officer on the case and dealt the most directly with Doe. He described her as panicked and crying, stating "You have to get my kids; he will kill my kids." Kelley observed visible redness to Doe's neck; he asked to photograph the marks but she refused. Over objection, Kelley testified that Doe told him appellant had both hands around her neck and threw her to the ground. She also told him appellant threatened her children. Doe refused, however, to make a written statement or to complete domestic violence paperwork Kelley requested from her. She told Kelley that if she signed her name to anything, she was dead, and a piece of paper could not protect her. She then told Kelley and another officer to "get the fuck out of [her] house." Kelley told her he needed to speak to the children to make sure they were O.K., but Doe told him he wasn't talking to the children.

{¶7} Doe's two children were present in the house. Officers testified they were holding their faces, crying for their mother and visibly upset. Ptl. Kelley had Doe check on the kids and worked with her to calm them and herself.

{¶8} Officers ordered appellant to the ground, took him into custody, and placed him in a cruiser. Dorsey described appellant as agitated, angry, and sweating profusely. Dorsey testified he observed signs of intoxication from appellant, including bloodshot, watery eyes and an odor of an alcoholic beverage emanating from him when he was placed in the cruiser. Appellant screamed obscenities, threatened officers, and slammed

his head against the divider inside the cruiser. Appellant stated that if police ever returned to his residence, he would "raise pipe."

{¶9} Appellant was charged by criminal complaint with one count of domestic violence pursuant to R.C. 2919.25(A)(1), a misdemeanor of the first degree. Appellant entered a plea of not guilty.

*Proceedings related to bond and DVTPO*

{¶10} We note that one day after the criminal complaint was filed, a "Motion for Criminal Domestic Violence Temporary Protection Order (DVTPO) (R.C. 2919.26)" was filed, signed by Jane Doe. An ex parte DVTPO was issued on November 13, 2018. A return of personal service in the record notes appellant was served with the ex parte DVTOP on November 13, 2018.

{¶11} On November 15, 2018, appellant filed a motion for bail modification stating, e.g., if he was released from jail he would not reside at the family home due to the DVTPO.

{¶12} On November 19, 2018, a "Motion" was filed, signed by Jane Doe, asking the trial court to remove the DVTPO. The Motion was scheduled for hearing, along with appellant's motion for bond modification, on November 21, 2018.

{¶13} On November 20, 2018, appellant filed a waiver of full hearing on the DVTPO, acknowledging that the DVTPO was in place and he must abide by its terms.

{¶14} On November 21, 2018, the trial court filed a Judgment Entry overruling the motion to modify bond and the motion to lift the DVTPO. The trial court weighed the statutory factors pursuant to R.C. 2929.251(B) and found, e.g., that appellant has a history of violence, including prior domestic violence arrests and assault convictions; has a history of harassing the victim, including violating the DVTPO by calling the victim after

he was served with the ex parte DVTPO, "and shouting to the protected person/alleged victim, in open court and on the record at the hearing, that he would call her as soon as he got back to the jail;" has a history of alcohol and substance abuse; allegedly choked or strangled the victim in the instant case with physical evidence on her face and neck observed by police; "exhibited controlling or obsessive verbal behaviors toward the protected person/alleged victim during the 24 recorded telephone calls from the jail, including swearing, threatening, and telling her to file the motion to remove the protective order; and "committed the alleged offenses in the presence of the alleged victim's two small children, a 3 year old girl and an 11 year old boy. The 11 year old was allegedly pushed by [appellant] in order to physically attack the alleged victim. According to the incident report, the children hid themselves in another room and the 11 year old called 911 for help." The trial court thereupon found appellant to be a potential threat to the protected person/alleged victim and to her children, who are also named in the DVTPO. The motions to modify bond and to lift the DVTPO were overruled.

*Trial, conviction, and sentence*

{¶15} The matter proceeded to trial by jury. Jane Doe did not testify.[1] Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence; the motion was overruled. Appellant rested without presenting evidence and was found guilty as charged.

---

[1] There is no explanation in the record why Jane Doe did not testify. The trial court inquired and the prosecutor said Doe was subpoenaed to appear. The prosecutor declined to request a warrant for her appearance.

{¶16} Sentencing was deferred. On the original date of the sentencing hearing, appellant became highly agitated and disruptive. He had to be removed from the courtroom and the hearing was continued.

{¶17} The matter proceeded to sentencing on December 18, 2018. Appellee made sentencing recommendations on the record and spoke for the victim, who chose not to appear. The prosecutor stated that Jane Doe did not request a no-contact order, although she did not want appellant returning to the residence and the state was requesting a no-contact order on behalf of Jane Doe and her children.

{¶18} Appellant was sentenced to a jail term of 180 days with 135 days suspended on the conditions that he successfully complete a term of community supervision including substance abuse monitoring and treatment, and evaluation for a batterers' treatment program. The DVTPO was terminated, but appellant was ordered not to reside with Jane Doe. He was ordered to pick up his clothing and personal property from her residence with a police escort.

{¶19} Appellant now appeals from the judgment entries of conviction and sentence.

{¶20} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶21} "I. THE TRIAL COURT ERRED WHEN IT PERMITTED TESTIMONIAL STATEMENTS AGAINST THE DEFENDANT TO BE PRESENTED TO THE JURY WHEN THE ALLEGED VICTIM DID NOT TESTIFY."

{¶22} "II. THE JURY VERDICT IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

I.

{¶23} In his first assignment of error, appellant argues the trial court erred in admitting the statements of Jane Doe to the police dispatcher and to first responders. We disagree.

{¶24} "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

{¶25} An accused's right to confront and cross-examine witnesses against him at trial is guaranteed by both the Sixth Amendment to the United States Constitution and the Ohio Constitution, Section 10, Article I. Jane Doe did not testify at trial, but the trial court admitted her call to police dispatch and her statements to first responders over appellant's objections, finding the statements to be admissible as excited utterances. On appeal, appellant does not disagree that the statements were excited utterances (and therefore need not be excluded as inadmissible hearsay) but instead argues admission of the statements violated the Confrontation Clause. "Evidence ... admissible at trial as a hearsay exception ... may nonetheless be inadmissible because it violates a defendant's right of confrontation." *State v. Dever,* 64 Ohio St. 3d 401, 415, 596 N.E.2d 436 (1992).

{¶26} The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify, and the defendant has had a prior opportunity for cross-examination.

{¶27} In the instant case, therefore, the issue is whether Doe's statements to first responders were "testimonial." According to *Crawford*, the initial analysis to be made in determining whether a defendant's right to confrontation has been violated by the admission of out-of-court statements that are not subject to cross-examination "is not whether [the statements] are reliable but whether they are testimonial in nature." *Toledo v. Sailes*, 180 Ohio App.3d 56, 2008-Ohio-6400, 904 N.E.2d 543, ¶ 13 (6th Dist.), citing *Crawford* at 61. To determine whether a statement is testimonial or nontestimonial, we inquire whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the case. *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph two of the syllabus.

{¶28} The Confrontation Clause guarantees the right of a defendant in a criminal case "to be confronted with the witnesses against him." *Crawford* at 38. A witness is a person who "bear[s] testimony," *Id*. at 51, quoting 2 N. Webster, An American Dictionary of the English Language (1828), therefore "the Confrontation Clause applies only to testimonial statements." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d

944, ¶ 59, citing *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 15. For testimonial hearsay to be admitted, the witness must be "unavailable to testify, and the defendant [must have] had a prior opportunity for cross-examination." *Crawford* at 54. With nontestimonial hearsay, however, "the States [have] flexibility in the development of hearsay law." *Id.* at 68.

{¶29} In *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Supreme Court expanded its holding in *Crawford* by stating that the Confrontation Clause does not apply to non-testimonial statements that are made for the purpose of enabling police to meet an "ongoing emergency." *Id.,* at 822. However, such statements are testimonial in nature "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution." *Id.*

{¶30} When out-of-court statements made to law enforcement are at issue, the primary purpose test applies. *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 28. An ongoing emergency does not necessarily end when the police arrive. *Cleveland v. Merritt*, 2016-Ohio-4693, 69 N.E.3d 102, ¶ 18 (8th Dist). To determine whether an ongoing emergency exists, courts must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Bryant*, 562 U.S. 344, 369, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). "The court should consider the primary purpose of both the declarant and the interrogator." *State v. Diggle*, 3d Dist. Auglaize No. 2–11–19, 2012-Ohio-1583, ¶ 25, citing *Bryant* at 1160. This analysis "cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may

continue." *Id.* at 1158. Further, formal questioning may suggest the emergency situation has subsided whereas informal interrogation may suggest the police were "address[ing] what they perceived to be an ongoing emergency." *Id.* at 1166. Regarding the victim, any potential injuries may shed light on his or her intentions. *Id.* at 1161. However, this "inquiry [regarding the victim's physical state] is still objective because it focuses on the understanding and purpose of a reasonable victim in the circumstances of the actual victim." *Id.*

{¶31} In this case, we find Doe's statements to first responders were nontestimonial under the primary purpose test. Doe called the New Philadelphia Police Department directly (as opposed to 911) and said she needed an officer immediately. When Dorsey, Kelley, and other officers arrived at the residence, their primary purpose was to determine how to address an ongoing emergency from his standpoint as a first responder. See *Bryant*, supra, at 1160. At that point, Doe was distraught and afraid, appellant was slamming the front door in their faces, and children were inside, crying. Kelley sought information from Doe to determine whether she was injured upon viewing the red marks to her neck, to determine whether the threat of immediate danger had subsided, and to identify and locate the assailant. See, *State v. Little*, 3rd Dist. No. 1-16-29, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 21. Further, this interview was informal, taking place at the location where Kelley first encountered Doe and indicating Kelley perceived this situation as an ongoing emergency. *Little*, id.; see also, *State v. Knecht*, 12th Dist. Warren No. CA2015–04–037, 2015-Ohio-4316, ¶ 25. The entire incident from Doe's call to police to arrival at the residence to departure with appellant in custody was just slightly more than fifteen minutes.

{¶32} Doe's statements were made "with the primary purpose of enabling the police to 'meet an ongoing emergency,' i.e., to apprehend the person involved." *Colon* at ¶ 23. Doe's primary purpose was to get appellant out of the house and away from her and the children; she did not cooperate in his arrest. Upon our review of the circumstances from Doe's perspective, "we find it unlikely that she or any reasonable person in this situation would perceive this interaction with law enforcement as being primarily a means for police to collect statements for later use at trial." *Little*, supra, 2016-Ohio-8398 at ¶ 22.

{¶33} We find that Doe's statements to police arose during an informal interview to procure the basic information police needed to proceed responsibly. *Id.* The responding officers obtained the statements to serve as the basis for further, responsive police action; the statements were not obtained for the primary purpose of documenting past events for later prosecution. *Id.*, citing *Colon* at ¶ 20 and *Merritt* at ¶ 13. Furthermore, although appellant argues the emergency was effectively ended because appellant was neutralized by placement in the cruiser, he continued to threaten officers and bang his head against the divider of the car—the threat to first responders therefore continued. *Diggle*, supra.

{¶34} Upon our review of the record, we find that Doe's statements were made before the scene was secured, during the course of an ongoing emergency at the time the officers arrived and while they remained. The primary purpose of the officers' questioning of Doe was to secure the scene, ensuring the safety of Doe and the children. See, *Toledo v. Sailes*, supra, 180 Ohio App.3d 56, 2008-Ohio-6400, 904 N.E.2d 543, and

¶¶ 11-18 (6th Dist.). Accordingly, we find that Doe's statements were non-testimonial in nature.

{¶35} We further note that the out-of-court statements of an unavailable declarant, whether testimonial or nontestimonial, still constitute hearsay, because they were "statement[s], other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).  Neither party addresses the "unavailability" of Doe for trial.  We will not speculate in light of the absence of explanation in the record.

{¶36} In cases where a hearsay statement is found to be nontestimonial in nature, it may not be admitted at trial unless it "falls within a firmly rooted hearsay exception." *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); Evid.R. 802. One of those exceptions is an "excited utterance," which is defined as a statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

{¶37} An excited utterance is one in which the declarant was under the excitement of a startling event and, therefore, the statement was not the product of reflection. *State v. Triplett*, 5th Dist. Stark No. 2012CA00200, 2013-Ohio-3114, ¶ 26, citing *State v. Taylor,* 66 Ohio St.3d 295, 300, 612 N.E.2d 316 (1993). For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. *Potter v. Baker,* 162 Ohio St. 488, 124 N.E.2d 140 (1955), paragraph two of the syllabus;

*State v. Duncan,* 53 Ohio St.2d 215, 373 N.E.2d 1234 (1978). In *Duncan,* the Ohio Supreme Court emphasized, " * * * an appellate court should allow wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event." *Id.* at 219.

{¶38} In the instant case, officers testified Doe was distraught, terrified, and screaming that appellant was going to hurt or kill her children.  She was shaking and "scared for her life."  T. 85.  The hearsay statements reported at trial were made spontaneously, without any prompting by police, and without any time for thought or reflection on the part of the declarant. Under such circumstances, we find the statements have the requisite degree of trustworthiness to qualify as excited utterances. *Triplett, supra.*

{¶39} We conclude the trial court did not err in permitting the testimony of first responders about Jane Doe's statements on November 10, 2018.  Admission of the statements did not violate the Confrontation Clause and the statements fall within an exception to the hearsay rule.  Appellant's first assignment of error is therefore overruled.

II.

{¶40} In his second assignment of error, appellant argues his domestic violence conviction is not support by sufficient evidence and is against the manifest weight of the evidence.  We disagree.

{¶41} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio

St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶42} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶43} Appellant was found guilty upon one count of domestic violence pursuant to R.C. 2919.25(A), which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Appellant incorporates the arguments from his first assignment of error, arguing his conviction is against the sufficiency and manifest weight of the evidence because, absent the purportedly inadmissible statements of Jane Doe, appellee did not prove him guilty beyond a reasonable doubt. We concluded supra that the statements of Jane Doe were admissible, and those statements establish

that appellant knowingly caused or attempted to cause physical harm to Doe by grabbing her around the neck, putting her up against the wall, and throwing her to the ground.

{¶44} However, even barring those statements, we note appellee presented compelling evidence upon which the jury could find appellant guilty. This call occurred at 5:30 a.m.; the mother of the house was found with red marks to her neck, the children of the house were awake and crying, and appellant was agitated, belligerent and aggressive toward police, exhibiting indicators of intoxication. Several officers interacted with Jane Doe on the night in question and all described her as distraught and terrified. The children in the house were equally distraught and crying for their mother.

{¶45} The testimony of one witness, if believed by the jury, is enough to support a conviction. *State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, ¶ 133. After weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determination, we cannot say that the jury clearly lost its way and created a manifest injustice with regard to the domestic-violence conviction. It is well-established that a domestic violence conviction does not require the testimony of the victim. Over twenty years ago, the unique nature of domestic violence prosecutions was acknowledged in *State v. Lee*, 73 Ohio Misc.2d 9, 14, 657 N.E.2d 604 (M.C.1995):

> No rule of law requires that a battered partner testify against a once loved one for the state to proceed on a charge of domestic violence. Murder cases obviously go forward without the testimony of the victim—because s/he's dead. Thus, if domestic violence cases

are properly investigated and prepared for trial, the victim's presence

at trial may not be required.

{¶46} Construing all of the evidence in favor of appellee, sufficient evidence supports appellant's conviction. Also, this is not the case in which the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. Appellant's conviction is not against the manifest weight of the evidence.

{¶47} Appellant's second assignment of error is therefore overruled.

## CONCLUSION

{¶48} Appellant's two assignments of error are overruled and the judgment of the New Philadelphia Municipal Court is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.