[Cite as *State v. Zielinski*, 2014-Ohio-5318.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2014-05-069 |
| | : | O P I N I O N |
| - vs - | | 12/1/2014 |
| | : | |
| CHRISHAWNDA ZIELINSKI, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2010CRB00365

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Chrishawnda Zielinski, 10499 Morrow-Rossburg Road, Pleasant Plain, Ohio 45162, defendant-appellant, pro se

**S. POWELL, J.**

{¶ 1}  Defendant-appellant, Chrishawnda Zielinski, appeals pro se from the decision of the Warren County Court denying her motion for leave to file a delayed motion for a new trial without holding an evidentiary hearing.  For the reasons outlined below, we affirm.[1]

{¶ 2}  On November 9, 2010, Zielinski was sentenced to six months of community

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this case from the accelerated calendar.

control, fined $250 and ordered to attend anger management classes after the trial court found her guilty of one count of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. The charge stemmed from a physical altercation between Zielinski and A.H., her then 15-year-old daughter.

{¶ 3} This court subsequently affirmed Zielinski's conviction on direct appeal in *State v. Zielinski*, 12th Dist. Warren No. CA2010-12-121, 2011-Ohio-6535. From that decision, this court summarized the evidence presented during the one-day bench trial as follows:

> [T]he altercation occurred on Mother's Day after A.H., who lives with her mother, returned home from a visit with her father. A.H. testified that she was upstairs in her room when mother asked her to work outside with the family. The two reportedly argued. Mother returned again upstairs at some point because, according to A.H., her mother thought she was "taking forever" to come downstairs.
>
> A.H. testified that her mother was standing in front of her and "came at me and I put my hands up, not to hit her or anything, but just put my hands up and she was so close, that I actually touched her and she got mad and she started swinging at me, * * * not really hard, just kind of swatting."
>
> A.H. said her mother was swatting at her when she pulled her mother's hair "like downwards and away from me, to get her off of me." A.H. said she tripped over things in her messy room and fell on her back and her mother fell on top of her. A.H. said she tried to crawl to the door, when mother "got on top of my back and put her arm around my neck" and was choking her. The daughter said she turned onto her back and mother was "on top of my stomach" and was holding A.H.'s arms back. "I was screaming and yelling and trying to get away."
>
> When asked how the fight ended, A.H. said "when I was on the ground, she punched me, one time right here, like right in the temple and two times right here on my bone (indicating face)." She said her mother told her to stop crying and she would let her up. A.H. said she "pulled it together really fast," her mother got up, and A.H. ran into her bathroom. The daughter said she began throwing things in her bathroom; "I was so upset." She called her father and stepmother on her cell phone and told them about the fight.
>
> A.H. testified that she had a bruise on her face and her wrist, her

- 2 -

temple area was swollen, she had some blurred vision afterward, and her ribs and back hurt. She said her mother helped put ice on her face and she eventually went outside with the family.

On cross examination, A.H. denied that the injury to her eye occurred "from the desk you ran into when you were falling over." She also denied the eye injury was caused by falling into the wall. A.H. said, "I was far enough distance from the wall that when I fell, I didn't hit it." She denied starting the physical fight. She admitted that she wanted to live with her dad and was now living with him at the time of trial.

A deputy sheriff testified that he responded to the house after father and stepmother called authorities. He said he observed the daughter's left eye was swollen and black and blue. He talked with A.H. and mother. Mother told the deputy her daughter has "an attitude" whenever she is dropped off from her father's, and the two were arguing over the daughter not coming outside to help with yard work.

The deputy testified A.H. said she accidently hit mother. Mother told the deputy she punched her daughter. He said he observed several marks on mother's hand, including a bite mark that the daughter admitted to inflicting when she said mother's hand was around her neck. Photographs were taken of the visible injuries of both mother and daughter. The deputy indicated he placed mother and daughter in custody for domestic violence because he was unable to determine the primary aggressor.

Mother testified that A.H.'s attitude was getting worse. "She's just been a little more mouthy and you know, typical teenager." Mother said that previously, the discipline they imposed on A.H. would include such things as taking away her cell phone. Mother felt that father and stepmother undermined her authority with her daughter. Mother indicated she and A.H. had not had a physical confrontation before this incident.

Mother said the first physical altercation with her daughter started at the top of the steps when she pulled on her daughter's elbow "to try to you know, just tell her come downstairs and then she [A.H.] swung back like this and she had her fist up at me." Mother testified that she told A.H., "[d]on't you dare do that." Stepfather observed this encounter.

Mother said no one witnessed the next encounter when she went back to her daughter's room to see why she still hadn't come downstairs. According to mother, the daughter was throwing and slamming things in her room. Mother said, "I didn't feel like listening to all her garbage at that time." She said A.H. was

screaming at her, so "I grabbed her arm, she swings back at me and I swing back at her." "I don't remember hitting her at all." Mother said A.H. grabbed mother's hair and would not let go. Mother said she picked up her daughter to try to control the situation. Mother said she wanted to get on top of her daughter to get this to stop.

Mother indicated that when she picked up her daughter, there were so many clothes, books, and things on the floor that "we end up falling and she hits the wall. She hit the wall so hard, she put a dent in my wall and at that point in time, when she hit the wall, I was concerned about her."

According to mother, the fight continued when A.H. tried to get up off the floor. Mother said she grabbed her daughter's head as she was getting up and they fell back into the desk. Mother got on top of her daughter and A.H. bit her hand. Mother said her daughter called her a "bitch" and said she hated her. A.H.'s body finally went limp after mother repeatedly told her daughter she wasn't getting up until she stopped what she was doing.

Mother denied telling the deputy she punched her daughter. She said she told the deputy she "must've punched her, because look at her eye." Mother told the prosecutor she was frustrated at her daughter "swinging things all over the place, her talking to me, like I was a piece of crap and not doing what I asked her to do. That's what frustrated me. * * * And she was frustrated with me, because she didn't want to do it."

Stepfather testified that he observed the earlier encounter on the stairs and indicated that the daughter reacted when mother "went to grab [A.H.'s] elbow," the daughter took a "step back and put both of her arms up in an aggressive manner." When asked if he had ever gotten into a physical confrontation with A.H., the stepfather said he had. The trial court sustained an objection by the prosecutor and no additional questions of that nature were asked.

*Id.* at ¶ 6-20.

**{¶ 4}** On March 25, 2014, over two years after this court affirmed Zielinski's conviction on direct appeal, Zielinski filed a motion for leave to file a delayed motion for a new trial pursuant to Crim.R. 33. In support of this motion, Zielinski relied on purported "new evidence substantial to her defense" regarding alleged statements made by A.H. to a social worker that were overheard by her husband, Brian Zielinski, as A.H. was being checked into

Cincinnati Children's Hospital for a psychiatric evaluation in May 2012. Specifically, Zielinski alleged:

> During intake only one parent was permitted in [A.H.'s] room. At one point during intake [Zielinski] returned to the lobby and stated that [A.H.] had requested Brian to enter her room. Upon entering the room, the Social Worker/Psychologist performing the intake stated to [A.H.] that some parties felt the physical altercation with the defendant, her mother was a set up. The social worker directed a question to [A.H.] asking if it was a set-up and [A.H.] responded in the affirmative. When asked if she had anything else to say, [A.H.] responded "I'm sorry."

{¶ 5} Zielinski also based her motion for leave on the results of A.H.'s May 2012 psychiatric evaluation, which indicated A.H. suffered from a "severe affective problem" that caused "volatility, disruption, and acting out" due to her "below-average capacity to manage stress, her poor control of emotional expression, and the strong intensity of her feelings."

{¶ 6} On April 10, 2014, without holding an evidentiary hearing, the trial court entered its decision denying Zielinski's motion for leave. In so holding, the trial court determined the alleged "newly discovered" evidence would not disclose a strong probability that the outcome of the trial would be different. The trial court also determined that this alleged "newly discovered" evidence "would simply be used for impeachment purposes, not to disprove the allegation of domestic violence."

{¶ 7} Zielinski now appeals from the trial court's decision denying her motion for leave to file a delayed motion for a new trial without holding an evidentiary hearing, raising three assignments of error for review. For ease of discussion, Zielinski's three assignments of error will be addressed together.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED BY FAILING TO HOLD AN EVIDENTIARY HEARING PRIOR TO DECIDING THE APPELLANT'S CRIM. RULE 33 MOTION FOR A NEW TRIAL.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED IN HOLDING THE APPELLANTS [SIC] MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE FAILS THE FIRST STEP IN THE PETRO TEST.

{¶ 12} Assignment of Error No. 3:

{¶ 13} THE TRIAL COURT ERRED IN HOLDING THE APPELLANTS [SIC] MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE FAILS THE SIXTH STEP OF THE PETRO TEST.

{¶ 14} In her three assignments of error, Zielinski argues the trial court erred by denying her motion for leave to file a delayed motion for a new trial. Zielinski also argues the trial court erred by not holding an evidentiary hearing on her motion. We disagree.

{¶ 15} Pursuant to Crim.R. 33(A)(6), a new trial may be granted on the motion of the defendant "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial."[2] As noted by the Ohio Supreme Court, in order to prevail on a motion for a new trial based upon newly discovered evidence, such as the case here, the defendant must establish the evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Petro*, 148 Ohio St. 505 (1947), syllabus; *State v. Webb*, 12th Dist. Clermont No. CA2013-01-013, 2014-Ohio-2894, ¶ 43.

{¶ 16} "Crim.R. 33 motions for a new trial are not to be granted lightly." *State v.*

---

2. We note that Zielinski's motion was filed well outside the 120-day period required by Crim.R. 33(B) for filing a motion for a new trial, thereby requiring her to seek leave from the trial court to file her motion.

*Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 21, citing *City of Toledo v. Stuart*, 11 Ohio App.3d 292, 293 (6th Dist.1983). "The decision 'to grant or deny a motion for a new trial on the basis of newly discovered evidence is within the sound discretion of the trial court and, absent an abuse of discretion, that decision will not be disturbed.'" *State v. Stojetz*, 12th Dist. Madison No. CA2009-06-013, 2010-Ohio-2544, ¶ 68, quoting *State v. Hawkins*, 66 Ohio St.3d 339, 350 (1993). The same is true regarding the trial court's decision to hold an evidentiary hearing on the motion. *State v. Gatliff*, 12th Dist. Clermont No. CA2012-06-045, 2013-Ohio-2862, ¶ 69. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 17} Here, after a thorough review of the record, we are not convinced this alleged "newly discovered" evidence regarding A.H.'s alleged statements to a social worker acknowledging the physical altercation with Zielinski was a "set up," or the results of A.H.'s May 2012 psychiatric evaluation, would have had any impact on the trial court's guilt finding. Although Zielinski maintains that she never struck A.H., just as the trial court found, there was evidence presented at trial indicating Zielinski admitted punching her daughter to the responding officer. In fact, Zielinski herself testified that she told the responding officer that she "must've punched [A.H.], because look at her eye." Nothing about this alleged "newly discovered" evidence negates this fact.

{¶ 18} Furthermore, even assuming the altercation was a "set up" by A.H. that was caused by her diagnosed "severe affective problem," this has no impact on Zielinski's conduct after the altercation with A.H. turned physical. Again, there was evidence presented at trial indicating Zielinski admitted punching her daughter to the responding officer. After hearing all the evidence presented at trial, including Zielinski's own testimony regarding the incident, the trial court was able to judge the credibility of the witnesses and find Zielinski

guilty of domestic violence.

{¶ 19} This court later affirmed that decision by concluding the "trial court could find from the manifest weight of the evidence that [Zielinski] caused or attempted to cause physical harm to her daughter as she was aware that her conduct would likely cause a certain result." *Zielinski*, 2011-Ohio-6535 at ¶ 32. This court also found Zielinski failed to "sustain her burden regarding her affirmative defenses" of self-defense, or even that she was "using proper and reasonable discipline to control her daughter." *Id.* Therefore, based on the facts and circumstances here, we agree with the trial court's finding that there was no reasonable probability that the outcome of the trial would have been different had the trial court been able to hear this alleged "newly discovered" evidence.

{¶ 20} We also agree with the trial court's decision finding this alleged "newly discovered" evidence would merely be used for impeachment purposes, a fact which Zielinski herself admitted as part of her motion for leave filed with the trial court. As Zielinski stated in her motion, "[t]his report, coupled with testimony at trial, would have elevated the reasonable doubt for the defendant. It would have been a primary means of *impeaching* the testimony of [A.H.]." (Emphasis added.) Zielinski also acknowledged as part of her appellate brief submitted to this court that such evidence was merely "*contradictory* to [A.H.'s] testimony at trial where she claimed she was trying to protect herself and stop the altercation." (Emphasis added.) As the alleged "newly discovered" evidence must do more than merely impeach or contradict the former evidence, this is an insufficient basis upon which to grant motion for a new trial. *See, e.g., State v. Hoop*, 12th Dist. Brown No. CA2012-10-019, 2013-Ohio-3078, ¶ 12 (finding no abuse of discretion in the trial court's decision denying a motion for a new trial where alleged "newly discovered" evidence was merely cumulative and served only to further impeach the evidence previously introduced at trial).

{¶ 21} Zielinski, however, claims an evidentiary hearing was required in this matter

because "the trial court judge who ruled on the appellant's motion for a new trial was not the initial Trier of fact." Zielinski has not cited to any authority to support her position, nor has our research revealed any such requirement within Crim.R. 33 to support such a claim. Rather, as previously noted, the decisions whether to grant a motion for a new trial or hold an evidentiary hearing on the motion are committed to the trial court's sound discretion. Based on the facts and circumstances here, we find the trial court did not abuse its discretion in failing to hold an evidentiary hearing. Zielinski's argument to the contrary is therefore without merit and overruled.

{¶ 22} Zielinski also claims she should be permitted to file a delayed motion for a new trial because the trial court created an "error of law" by finding her guilty, a decision which she claims is in conflict with the Seventh District Court of Appeals' decision in *State v. Rosa*, 7th Dist. Mahoning No. 12 MA 60, 2013-Ohio-5867. In that case, the Seventh District held "proof of unreasonable parental discipline is part of the analysis of the physical harm element, with the state bearing the burden of proof." *Id.* at ¶ 3. Zielinski, however, did not argue parental discipline at trial; rather, she merely argued self-defense. We have already determined that this did not constitute ineffective assistance of trial counsel. *Zielinski*, 2011-Ohio-6535 at ¶ 54-57.

{¶ 23} It is a well-established principle that the various trial courts within the counties comprising this district are bound to follow case law from this court and that from the Ohio Supreme Court, and not from our brethren in the Seventh District. Moreover, even if we were to adopt the Seventh District's reasoning in *Rosa*, that decision was released two years after this court had already affirmed Zielinski's conviction on direct appeal. This court is not willing to revisit our decision in *Zielinski* and allow for a new trial under these circumstances. This is particularly true here given this matter constitutes a factually intensive case of domestic violence between a mother and her daughter. Therefore, Zielinski's argument that she

- 9 -

should be granted leave to file a delayed motion for a new trial based on the Seventh District's decision in *Rosa* is likewise without merit and overruled.

{¶ 24} In light of the foregoing, we find the trial court did not abuse its discretion in denying Zielinski's motion for leave to file a delayed motion for a new trial, nor did the trial court abuse its discretion in failing to conduct an evidentiary hearing regarding the same. Accordingly, Zielinski's three assignments of error are overruled.

{¶ 25} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.