[Cite as *State v. Knecht*, 2015-Ohio-4316.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2015-04-037 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 10/19/2015 |
| - vs - | | |
| | : | |
| TERRY T. KNECHT, | : | |
| | | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2014CRB00876

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Droder & Miller Co., L.P.A., Jeffrey T. Kenney, 125 West Central Parkway, Cincinnati, Ohio 45202, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Terry T. Knecht, appeals from his conviction in the Warren County Court for one count of domestic violence. For the reasons outlined below, we affirm.

{¶ 2} On October 7, 2014, a complaint was filed in the Warren County Court charging Knecht with one count of domestic violence in violation of R.C. 2919.25(A), a first-degree

misdemeanor. According to the complaint, the charges stemmed from allegations that Knecht head-butted his wife, D.K., thereby causing her to suffer a black eye during an argument at their shared business located in Hamilton Township. The trial court then issued a domestic violence temporary protection order against Knecht naming his wife, D.K., as the lone protected person.

{¶ 3} Approximately three weeks later, on October 28, 2014, the trial court modified its domestic violence protection order to allow Knecht to return to the couples' shared residence located in Morrow after learning D.K. had moved out of the home and had rented an apartment. The domestic violence temporary protection order was then modified for a second time on November 25, 2014 to allow Knecht and D.K. to enter into counseling. It is undisputed that during this time, D.K. had filed a complaint for divorce only to have withdrawn it shortly thereafter.

{¶ 4} On December 16, 2014, D.K. voluntarily appeared before the trial court without counsel and requested the trial court terminate or modify the domestic violence temporary protection order against her husband. In support of this motion, D.K. informed the trial court that some of the statements she made to police regarding the alleged domestic violence incident were untrue and that she should be punished. The trial court then scheduled the matter for a hearing and advised D.K. to retain a lawyer. However, two weeks later, on December 29, 2014, D.K., now represented by counsel, filed a notice with the trial court withdrawing her motion to terminate or modify the trial court's domestic violence temporary protection order. The matter was then scheduled for a bench trial on February 27, 2015.

{¶ 5} Although issuing several subpoenas to her and to her attorney, it is undisputed that D.K. did not appear at trial. Rather, Sergeant Terry Viel of the Hamilton Township Police Department testified that on the evening of October 6, 2014, he and a now former probationary officer were dispatched to the Hamilton Township business after D.K. called 9-

1-1 to report a claim of domestic violence. Once they arrived, Sergeant Viel made contact with D.K., the alleged victim. According to Sergeant Viel, D.K. was "irate, crying, upset, emotionally upset," a reaction that he testified was typical for domestic violence victims. Sergeant Viel then testified that he observed "two marks on [D.K.'s] head, one being on the left side right at her left eye, and then another mark on the opposite side on the right side." Pictures depicting D.K.'s facial injuries were subsequently identified and admitted into evidence. Sergeant Viel then testified, over an objection alleging a violation of the Confrontation Clause as found in the Sixth Amendment to the United States Constitution, that D.K. informed him that "her husband had -- they had got into an argument and then he assaulted her."

{¶ 6} Officer Richard Smith of the Hamilton Township Police Department also testified at trial. Officer Smith testified that he too was dispatched to the Hamilton Township business where he observed D.K. "crying, very upset, emotional, distraught." Similar to Sergeant Viel's testimony, Officer Smith also testified that he noticed D.K. "had on her right side, and then the left side she had two injuries on each side of her face." Officer Smith further testified, again over objection alleging a violation of the Confrontation Clause, that D.K. informed him that her husband, Knecht, had "shoved her on the couch and then he head-butted her and that's how she received the injuries." It is undisputed that D.K. did not request any medical treatment for her facial injuries that evening.

{¶ 7} Continuing, Officer Smith then testified that approximately 30 minutes after making contact with D.K., he and the now former probationary officer went to the couple's nearby Morrow residence to speak with Knecht. The distance between the couple's Hamilton Township business and their Morrow residence is approximately six miles. Once there, Officer Smith made contact with Knecht and noticed that Knecht had a bruise on his forehead. Pictures depicting Knecht's bruised forehead were also identified and admitted

into evidence. Officer Smith then testified that he asked Knecht to explain why his wife was injured, to which Knecht responded that "she must have done it herself." Officer Smith further testified that Knecht claimed the bruise to his forehead was the result of him crushing beer cans on his head during a night out with friends that weekend. However, when asked to describe the bruise on Knecht's forehead, Officer Smith testified "[i]t looked fresh to me" because an older bruise "would be much darker or colors would be darker than that."

{¶ 8} In his defense, Knecht testified that he and his wife had a brief argument sometime around 12:30 p.m. on October 6, 2014 while the pair was working at their Hamilton Township business. According to Knecht, D.K. was upset that he had left for the weekend to hang out with friends, "acting a fool that weekend" by "drinking and having fun," instead of being home with their daughter. Knecht also claimed they were discussing a "difference of opinion" on whether to purchase an additional piece of property for the business. Knecht then testified that after their discussion concluded at approximately 1:30 p.m., he left with their daughter and went home, neither seeing nor speaking to his wife the rest of the day. When asked if he ever physically assaulted or threatened D.K. that day, Knecht testified, "[n]o. Absolutely not, no." Knecht's father also testified that he did not observe any injuries to D.K. when he stopped by the Hamilton Township business shortly after 3:00 p.m. that day.

{¶ 9} In addition to this testimony, Knecht also testified that the bruise on his forehead was from him crushing beer cans on his forehead that weekend. As Knecht testified, he did this "[p]robably two or three, four times." Knecht's friend, however, testified that he only saw Knecht attempt to crush a beer can on his forehead once. In addition, when asked if Knecht was successful in his attempt to crush the beer can, the friend testified "[n]ot too much." The friend also testified that he did not notice any injury to Knecht's forehead after his unsuccessful attempt to crush the beer can. The parties then rested and the trial court took the matter under advisement.

{¶ 10} On March 2, 2015, the trial court issued a decision finding Knecht guilty as charged. In reaching this decision, the trial court stated, in pertinent part:

> This Court finds that [D.K.'s] initial statements to Sergeant Viel and Officer Smith, when upon their arrival was asked how she received the visible injuries to her head, are nontestimonial statements, and are exceptions to the hearsay rule under the excited utterance exception.

{¶ 11} Several weeks after the trial court issued its decision, on March 25, 2015, D.K. filed an affidavit with the trial court, which provided, in its entirety, the following:

> 1. On October 6th, 2014 I called the police at approximately 6:00pm to report and incident that occurred at approximately 12:00 noon that same day.
>
> 2. There were no other incidents with my Husband that day, other than the one that occurred at 12:00pm.
>
> 3. Shortly after 1:00pm on October 6th, 2014, my Husband left with my daughter and I did not see him the rest of the day.
>
> 4. I worked the rest of the day and then called the police.
>
> 5. As I stated to the victim advocate and to the prosecutor both personally and through counsel, and in open court on December 16, 2014, I do not believe my husband assaulted me or committed domestic violence against me on October 6, 2014, that I did not have continuing fear for my safety, and that I request the charges against him be dismissed.
>
> 6. I still believe what is stated in paragraph 5, and I still I request that the charges against him be dismissed.

{¶ 12} The next day, March 26, 2015, Knecht filed a motion for a new trial based on D.K.'s affidavit. One week later, on March 31, 2015, the trial court held a hearing on Knecht's motion for a new trial, which the trial court ultimately denied. In so holding, the trial court determined that D.K.'s "affidavit does not necessarily say it did not happen. What it states specifically is, I do not believe my husband assaulted me or committed domestic violence against me on that date."

{¶ 13} Nevertheless, even after denying Knecht's motion, the trial court allowed D.K. to

make a lengthy statement prior to sentencing her husband, wherein she provided a detailed account of her purported abusive childhood, diagnosed mental disorders, several recent episodes of erratic behavior, as well as difficulties with her marriage. In addition, in an attempt to explain the documented injuries to her face, D.K. claimed she had been working all day when she "passed out" and woke up on the floor with "a hurt hip and bruises on my face." To this, D.K. stated she "thought this was an opportunity that [she] could take advantage of. I had bumps and bruises on my face, and he had marks on his forehead. I rationalized that I had nothing to lose."

{¶ 14} Continuing, D.K. claimed she "told the police things that [were] not true to gain leverage in a divorce." D.K. also claimed she was upset when Sergeant Viel and Officer Smith arrived due to a "horrible previous encounter" with Officer Smith, who she alleged had been caught "sneaking around our house" and seeing her "inside the house undressed" when investigating a previous noise complaint on the property. Concluding, D.K. stated "my husband did not abuse me, and my husband did not hurt me."

{¶ 15} After D.K. entered her statement, the trial court sentenced Knecht to 30 days in jail, with 25 of those days suspended, and one year of probation. The trial court then stayed his sentence pending appeal. Approximately one week later, on April 6, 2015, D.K. filed another affidavit with the trial court that mirrored the statement she had provided to the trial court at the March 31, 2015 hearing. Ten days later, on April 16, 2015, Knecht filed a motion requesting the trial court to reconsider its decision denying his motion for a new trial based on D.K.'s newly filed affidavit. The trial court denied Knecht's motion that same day.

{¶ 16} Knecht now appeals from his conviction, raising two assignments of error for review.

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT-APPELLANT

BASED ENTIRELY UPON THE POLICE OFFICERS' INADMISSIBLE HEARSAY TESTIMONY IN VIOLATION OF THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶ 19} In his first assignment of error, Knecht argues the trial court erred by admitting inadmissible hearsay testimony in violation of the Confrontation Clause as found in the Sixth Amendment to the United States Constitution. We disagree.

{¶ 20} Generally, a trial court's ruling as to the admissibility of evidence will not be reversed absent an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. However, we review a claim that a criminal defendant's rights have been violated under the Confrontation Clause de novo. *State v. Doby*, 12th Dist. Butler No. CA2013-05-084, 2014-Ohio-2471, ¶ 31, citing *State v. Bryant*, 12th Dist. Warren No. CA2007-02-0241, 2008-Ohio-3078, ¶ 48. De novo review means "'that we apply the same standards as the trial court.'" *State v. Chavez-Juarez*, 185 Ohio App.3d 189, 2009-Ohio-6130, ¶ 44 (2d Dist.), quoting *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, ¶ 16 (2d Dist.).

{¶ 21} The Confrontation Clause as found in the Sixth Amendment to the United States Constitution preserves the right of a criminal defendant "to be confronted with the witnesses against him." To that end, the Confrontation Clause bars the admission of "testimonial hearsay" unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. *State v. Primo*, 12th Dist. Butler No. CA2004-09-237, 2005-Ohio-3903, ¶ 12, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354 (2004). The key issue, therefore, is what constitutes a testimonial statement for "'[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 33, quoting *Davis v. Washington*, 547

U.S. 813, 821, 126 S.Ct. 2266 (2006).

{¶ 22} The United States Supreme Court found testimonial statements existed where there was no ongoing emergency and the statements resulted from a police interrogation whose "'primary purpose [was] to establish or prove past events potentially relevant to later criminal prosecution.'" *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 17, quoting *Davis*, 547 U.S. at 822. However, as the Supreme Court further explained, "the existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry." (Emphasis sic.) *Michigan v. Bryant*, 562 U.S. 344, 374, 131 S.Ct. 1143 (2011). Rather, in making this "primary purpose" determination, courts must consider "all of the relevant circumstances." *Id.* at 369. In other words, "whether an ongoing emergency exists is simply one factor – albeit an important factor – that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation." *Id.* at 366.

{¶ 23} Another factor to be considered in determining the "primary purpose" of an interrogation is the formality of the situation. *Ohio v. Clark*, __ U.S. __, 135 S.Ct. 2173, 2180 (2015), citing *Bryant*, 562 U.S. at 377. For instance, while a "formal station-house interrogation" is more likely to provoke testimonial statements, "less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused." *Id.*, citing *Bryant*, 562 U.S. at 366, 377. The standard rules of hearsay, designed to identify some statements as reliable, are also relevant when determining whether a statement is testimonial. *Id.*, citing *Bryant*, 562 U.S. at 358-359. The same is true regarding "[t]he statements and actions of both the declarant and interrogators" for this "provide[s] objective evidence of the primary purpose of the interrogation." *Bryant*, 562 U.S. at 367. Thus, in the end, "the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Clark*, quoting *Bryant*, 562 U.S. at 358. "Where no such

primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.*, quoting *Bryant*, 562 U.S. at 359.

{¶ 24} After a thorough review of the record, we find D.K.'s statements to Sergeant Viel and Officer Smith were non-testimonial as the primary purpose in questioning D.K. was not to create an out-of-court substitute for trial testimony. Rather, as Sergeant Viel's and Officer Smith's testimony reveals, the questioning was conducted in response to D.K.'s 9-1-1 call reporting that she had been a victim of domestic violence. Once Sergeant Viel and Officer Smith arrived at the scene, they discovered D.K. visibly shaken and in a very emotional state with two clear injuries to her head. Specifically, as Sergeant Viel testified, D.K. was "irate, crying, upset, emotionally upset," a reaction that he testified was typical for domestic violence victims. Officer Smith also testified that he observed D.K. "crying, very upset, emotional, distraught." Both Sergeant Viel and Officer Smith then testified that D.K. informed them that it was her husband, Knecht, who had caused the injuries to her head.

{¶ 25} Unlike a formal station-house interrogation, this situation provided for a much more informal questioning process. In addition, because Knecht had not been arrested or even identified as a suspect when Sergeant Viel and Officer Smith first arrived at the scene, this indicates the presence of an ongoing emergency. As the Supreme Court has stated, an emergency "does not last only for the time between when the assailant pulls the trigger and the bullet hits the victim." *Bryant*, 562 U.S. at 373. Moreover, the fact that D.K. was distressed, very upset and crying lends itself to a conclusion that her statements were non-testimonial. Therefore, under these circumstances, D.K.'s statements to police indicating her husband had caused her facial injuries were nontestimonial as the primary purpose in the questioning was not to create an out-of-court substitute for trial testimony, but to assist D.K. and identify the person who had caused her harm. Accordingly, because we find D.K.'s statements were non-testimonial, the admissibility of D.K.'s statements would be governed by

the rules of evidence, and not by the Confrontation Clause.

**{¶ 26}** As noted above, the trial court found D.K.'s statements to Sergeant Viel and Officer Smith were admissible under the excited utterance exception to the hearsay rule as found in Evid.R. 803(2). Pursuant to that rule, an excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." A hearsay statement is admissible as an excited utterance if: "(1) there was an event startling enough to produce a nervous excitement in the declarant; (2) the statement was made while under the stress of excitement caused by the event; (3) the statement related to the startling event; and (4) the declarant must have had an opportunity to personally observe the startling event." *State v. Worth*, 10th Dist. Franklin No. 10AP1125, 2012-Ohio-666, ¶ 22, citing *State v. Taylor*, 66 Ohio St.3d 295, 300-301 (1993).

**{¶ 27}** In analyzing whether a statement is an excited utterance, "'[t]he controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection.'" *State v. Nixon*, 12th Dist. Warren No. CA2011-11-116, 2012-Ohio-1292, ¶ 13, quoting *State v. Humphries*, 79 Ohio App.3d 589, 598 (12th Dist.1992). Whether a hearsay statement is admissible as an excited utterance is reviewed under an abuse of discretion standard. *State v. Henry*, 12th Dist. Clermont Nos. CA2013-12-095 and CA2013-12-097, 2014-Ohio-4624, ¶ 55.

**{¶ 28}** As previously stated, once Sergeant Viel and Officer Smith arrived at the scene, they discovered D.K. visibly shaken and in a very emotional state with two clear injuries to her head. Again, as Sergeant Viel testified, D.K. was "irate, crying, upset, emotionally upset," a reaction that he testified is typical for domestic violence victims. Officer Smith also testified that he observed D.K. "crying, very upset, emotional, distraught." Under these circumstances, the trial court did not abuse its discretion in admitting D.K.'s statements to Sergeant Viel and Officer Smith under the excited utterance exception to the hearsay rule as

found in Evid.R. 803(2). *E.g., Nixon*, 2012-Ohio-1292 at ¶ 14 (statements made to police officer were admissible as excited utterance where victim was shaken and scared when she spoke with police officer shortly after the officer arrived at the scene); *Cleveland v. Williams*, 8th Dist. Cuyahoga No. 101588, 2015-Ohio-1739, ¶ 13 (statements were admissible as excited utterance where victim was "visibly upset and crying; her face was swollen; and she had bruises on her face, as well as on her neck when she made the statements to the police officers"). Therefore, because the trial court did not err by admitting D.K.'s statements made to Sergeant Viel and Officer Smith, Knecht's first assignment of is without merit and overruled.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION FOR NEW TRIAL.

{¶ 31} In his second assignment of error, Knecht argues the trial court erred by denying his motion for a new trial based on D.K.'s two affidavits and the statement she made to the trial court prior to sentencing, all of which he claims constitutes "new evidence" entitling him to a new trial. We disagree.

{¶ 32} Pursuant to Crim.R. 33(A)(6), a new trial may be granted on the motion of the defendant "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." In order to prevail on a motion for a new trial based upon newly discovered evidence, the defendant must establish the evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Zielinski*, 12th Dist. Warren No. CA2014-05-069,

2014-Ohio-5318, ¶ 15, citing *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

**{¶ 33}** "Crim.R. 33 motions for a new trial are not to be granted lightly." *State v. Thornton*, 12th Dist. Clermont No. CA2012-09-063, 2013-Ohio-2394, ¶ 21, citing *City of Toledo v. Stuart*, 11 Ohio App.3d 292, 293 (6th Dist.1983). "The decision 'to grant or deny a motion for a new trial on the basis of newly discovered evidence is within the sound discretion of the trial court and, absent an abuse of discretion, that decision will not be disturbed.'" *State v. Stojetz*, 12th Dist. Madison No. CA2009-06-013, 2010-Ohio-2544, ¶ 68, quoting *State v. Hawkins*, 66 Ohio St.3d 339, 350 (1993). An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

**{¶ 34}** Here, after a thorough review of the record, we are not convinced this alleged "new evidence" would have had any impact on the trial court's guilt finding. Once again, after arriving at the scene, Sergeant Viel and Officer Smith discovered D.K. visibly shaken and in a very emotional state with two clear injuries to her head. Specifically, Sergeant Viel testified that D.K. was "irate, crying, upset, emotionally upset," a reaction that he testified is typical for domestic violence victims. Officer Smith also testified that he observed D.K. "crying, very upset, emotional, distraught." Both Sergeant Viel and Officer Smith then testified that D.K. informed them that it was her husband, Knecht, who had caused the injuries to her head. Although D.K. now claims this was merely an act to gain leverage in a divorce, nothing about this alleged "new evidence" negates Sergeant Viel or Officer Smith's testimony.

**{¶ 35}** Moreover, it is well-established that a trial court may weigh the credibility of the affidavits submitted in support of a motion for a new trial to determine whether to accept the statements in the affidavit as true. *State v. Rodriguez*, 12th Dist. Butler No. CA2008-07-162, 2009-Ohio-4460, ¶ 76, citing *State v. Beavers*, 166 Ohio App.3d 605, 2006-Ohio-1128, ¶ 20-21 (2d Dist.). In this case, however, the trial court also had the opportunity to weigh D.K.'s

credibility first hand; namely, on December 16, 2014 when D.K. informed the trial court that some of the statements she made to police regarding the alleged domestic violence incident were untrue and that she should be punished, and again on March 31, 2015 when D.K. provided a lengthy statement to the trial court prior to sentencing during which time she claimed her injuries occurred after she "passed out" and woke up on the floor with "a hurt hip and bruises on my face." In turn, not only do we find this alleged "new evidence" merely contradicts the former evidence presented at trial, by denying Knecht's motion for a new trial, the trial court clearly found D.K.'s explanation regarding the cause of her injures lacked credibility. We find no error in the trial court's decision. Therefore, Knecht's second assignment of error is likewise without merit and overruled.

{¶ 36} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.