[Cite as *State v. Leach*, 2024-Ohio-3145.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-08-012 |
| | : | O P I N I O N |
| - vs - | | 8/19/2024 |
| | : | |
| JONATHAN A. LEACH, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20230034


Nicholas A. Adkins, Madison County Prosecuting Attorney, and Michael S. Klamo, Chief Assistant Prosecuting Attorney, for appellee.

Shannon M. Treynor, for appellant.



**HENDRICKSON, J.**

{¶ 1} Appellant, Jonathan A. Leach, appeals his convictions in the Madison County Court of Common Pleas for two counts of rape. For the reasons discussed below, we affirm.

### I. Factual and Procedural Background

{¶ 2} On March 10, 2023, Leach was indicted on two counts of rape in violation

of R.C. 2907.02(A)(1)(b), felonies of the first-degree. The Indictment alleged that the victim of the rape offenses, "Emma," was a child under ten years of age.[1]

{¶ 3} Leach had been dating Emma's grandmother, Ana, in the late summer or early fall of 2019. By January 13, 2023, Leach was living together with Ana in her home. On January 13, 2023, Emma was spending the night at Ana's home. Around 10:45 p.m., Emma, Ana, and Leach were in the living room. Emma was in her pajamas on the couch where she was going to sleep. Ana left the living room and went to her own bedroom, leaving Emma and Leach in the living room.

{¶ 4} Ana returned to the living room approximately 30-45 minutes later. Ana noticed that, although Emma still had her panties on, her pajama bottoms were off and tangled in her blanket. Ana recalled that Emma's pajama bottoms were on when Ana had gone to bed earlier. Ana described Emma as "mortified," "shocked," and "very scared." After getting Emma some cookies, Ana asked what was wrong. Emma told Ana that Leach had touched her inappropriately. Eventually Ana took Emma to her bedroom, away from Leach, and again asked what happened. Emma told Ana that Leach touched her "privacy," licked her "privacy" and had put his "privacy" in her mouth. Emma pointed to her vagina as her privacy.

{¶ 5} Soon thereafter, Ana and Emma left the home in Ana's car. Ana parked in a school parking lot and asked Emma again what happened and recorded it with her phone. Emma told Ana that Leach tried to put his privacy in her mouth.

{¶ 6} DNA specimens were collected from Emma and Leach. Leach's DNA was discovered on the interior front panel of Emma's panties. Emma's DNA was discovered on Leach's penis.

---

1. "Emma" is a pseudonym adopted in this opinion for purposes of privacy and readability. *In re D.P.*, 2022-Ohio-4553 (12th Dist.), ¶ 1, fn. 1.

{¶ 7} The matter proceeded to a jury trial, and the jury returned guilty verdicts on both rape counts. The trial court sentenced Leach to two concurrent prison terms of life without parole.

{¶ 8} Leach now appeals, raising four assignments of error for our review.

## II. Legal Analysis

{¶ 9} Assignment of Error No. 1:

THE COURT ABUSED ITS DISCRETION BY FINDING THAT THE TESTIMONIAL, OUT OF COURT STATEMENTS BY THE ACCUSER MET THE CRITERIA FOR AN EXCEPTION TO HEARSAY.

{¶ 10} In his first assignment of error, Leach argues that the trial court committed prejudicial error by admitting Ana's testimony concerning two of Emma's out-of-court statements: (1) After Ana removed Emma to the bedroom, Emma stated that Leach touched her privacy, licked her privacy, and put his privacy in her mouth; and (2) when Ana drove with Emma and parked her car in the school parking lot, Ana recorded Emma's statement that Leach tried to put his privacy in her mouth. The trial court admitted these statements as present sense impressions.

{¶ 11} Leach asserts that Emma's statements to Ana were testimonial in nature, and therefore violated the Confrontation Clause of the Sixth Amendment. Leach argues that Ana purposefully elicited these statements from Emma for later use at trial. Leach further argues that the statements were not present sense impressions or excited utterances because of how much time had passed since Emma's encounter with Leach. The statement in the bedroom was made several minutes after the event, and the statement in the parking lot was made about one hour after the event. Leach argues that Ana's decision to record Emma's statement in the parking lot indicates her intent to prepare evidence for later use at trial. We disagree.

{¶ 12} "Generally, a trial court's ruling as to the admissibility of evidence will not be reversed absent an abuse of discretion." *State v. Knecht*, 2015-Ohio-4316, ¶ 20 (12th Dist.). However, a claim that a criminal defendant's rights have been violated under the Confrontation Clause is reviewed de novo. *Id.*

{¶ 13} The Confrontation Clause, as found in the Sixth Amendment to the United States Constitution, preserves the right of a criminal defendant "to be confronted with the witnesses against him." To that end, the Confrontation Clause bars the admission of "testimonial hearsay" unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. *State v. Primo*, 2005-Ohio-3903, ¶ 12 (12th Dist.), citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The key issue, therefore, is what constitutes a testimonial statement for "'[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" *State v. Hood*, 2012-Ohio-6208, ¶ 33, quoting *Davis v. Washington*, 547 U.S. 813, 821 (2006).

{¶ 14} The Supreme Court of the United States has explained that statements are nontestimonial when "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis* at 822. Statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* Additionally, a formal station-house interrogation is more likely to provoke testimonial statements, while less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused. *Ohio v. Clark*, 576 U.S. 237, 245 (2015).

{¶ 15} In the present case, when Ana asked Emma to tell her what had happened,

the two of them were faced with the ongoing emergency of Emma having recently been raped, with the assailant still in Ana's home. Ana elicited Emma's statements not to create evidence for use at trial, but to get a sense of what had happened to her granddaughter and what to do next. Ana testified that her primary concern at that time was "To get her out of there, get her to be safe." Ana's conduct afterwards demonstrates this as she went to two different police agencies and then took Ana to the hospital for a medical exam.

{¶ 16} Although Ana chose to record Emma's statement in the parking lot, there is no indication that she did so with the intent to prepare evidence for trial, and she did not tell Emma that her statements were being recorded for any such purpose. Ana testified that, at that moment, her mind was racing through thoughts about her previous divorce, having a live-in boyfriend for the first time, and her desire to not subject her children to any harm. There was no design behind her choice to record Emma. "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." *Clark*, 576 U.S. at 249. Further, "Statements by very young children will rarely, if ever, implicate the Confrontation Clause," as it is extremely unlikely a child victim would intend her statements to be a substitute for trial testimony. *Id.* at 247-248. Therefore, we find that Emma's statements to Ana were not testimonial in nature, and admitting them at trial did not violate the Confrontation Clause.

{¶ 17} Moreover, Evid.R. 803(1) permits the admission of a "present sense impression," which is defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Similarly, Evid.R. 803(2) also permits the admission of an excited utterance. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under

the stress of excitement caused by the event or condition." There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. *State v. Sims*, 2009-Ohio-550, ¶ 14 (12th Dist.). Rather, in analyzing whether a statement is an excited utterance, "'[t]he controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection.'" *State v. Nixon*, 2012-Ohio-1292, ¶ 13 (12th Dist.), quoting *State v. Humphries*, 79 Ohio App.3d 589, 598 (12th Dist. 1992).

{¶ 18} Ana testified that Emma looked "mortified" and "very scared and shocked" when she discovered Emma after the rape. Emma's statement in the bedroom was made only minutes later, while her assailant was still in the house. Emma's statement in the vehicle was made only about one hour after the incident, during Ana's efforts to separate Emma from Leach as the circumstances permitted. The mere fact that a victim's statement was made even several hours after the event does not automatically disqualify it as an excited utterance. *State v. Baker*, 137 Ohio App.3d 628, 649 (12th Dist. 2000). When the victim is still under a "nervous state of excitement," the victim's statement may qualify as an excited utterance. *Id.*; *see also State v. Chappell*, 97 Ohio App.3d 515, 591 (8th Dist. 1994) (finding a nine-year-old's statement to her grandmother qualified as an excited utterance even though it was made 32 hours after being raped). Additionally, Emma's statement in the car was consistent with her statement in the bedroom, lending it further credibility. Both of Emma's statements were clearly admissible as excited utterances.

{¶ 19} Leach's first assignment of error is overruled.

{¶ 20} Assignment of Error No. 2:

> THE COURT COMMITTED REVERSIBLE ERROR BY NOT FINDING PREJUDICE AS A RESULT OF THE PROSECUTION'S DISCOVERY VIOLATION IN ITS

- 6 -

FAILURE TO DISCLOSE EXCULPATORY EVIDENCE.

**{¶ 21}** In his second assignment of error, Leach argues he suffered prejudice when the state failed to disclose a voicemail recording until the middle of trial, when the state realized it had not been turned over.

**{¶ 22}** Crim.R. 16 governs discovery in criminal prosecutions. *State v. Wilson*, 2013-Ohio-3877, ¶ 14 (12th Dist.). "Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect." *State v. Joseph*, 73 Ohio St.3d 450, 458 (1995). Sanctions for a Crim.R. 16 discovery violation are within the discretion of the trial court. *State v. Palmer*, 2014-Ohio-5491, ¶ 39 (12th Dist.). When deciding on a sanction, the trial court must impose the least severe sanction that is consistent with the purpose of the rules of discovery. *Id.*

**{¶ 23}** On January 19, 2023, the police had received two voicemails from Ana and from Emma's mother, advising them that Emma had recanted her accusations against Leach. The police failed to preserve these voicemail recordings; however, the state provided the content of these voicemails to the defense in discovery. At trial, Leach moved to dismiss the charges due to the state's failure to preserve these voicemails. On July 25, 2023, during the discussion of the defense's motion to dismiss, the prosecutor disclosed that there was a third voicemail left by Emma's mother for the state's victim's advocate on February 22, 2023, advising the victim's advocate of Emma's recantation. The prosecutor conceded that he knew of this voicemail more or less immediately and had neglected to provide it to the defense in discovery. The third voicemail was then provided to the defense and played for the trial court.

**{¶ 24}** The trial court ultimately overruled Leach's motion to dismiss, reasoning that

the defense had been informed of the content of the first two voicemails and was able to use the information about Emma's recantation in cross-examination. Further, the trial court found that the specific recordings were not material to the defense, and the third voicemail was cumulative to the other voicemails. The defense learned of this third voicemail prior to the testimony of Emma's mother and Ana. Thus, this information was available to use on cross-examination of those witnesses. Nevertheless, the defense did not move for a continuance or an adjournment to investigate the third voicemail or consider its significance to the defense.

{¶ 25} On appeal, the defense asserts that the third voicemail was important for establishing a timeline and the time period over which Emma maintained her recantation before retracting it. However, the dates of the voicemails were apparent and constructing the timeline was not a complicated undertaking. There is no indication that the state's failure to provide the third voicemail in discovery was willful, and the third voicemail was otherwise cumulative to the first two voicemails. Therefore, the defense did not suffer prejudice from the late disclosure.

{¶ 26} Leach's second assignment of error is overruled.

{¶ 27} Assignment of Error No. 3:

THE COURT COMMITTED PLAIN ERROR BY NOT ISSUING A LIMITING INSTRUCTION FOLLOWING A SUSTAINED HEARSAY OBJECTION THAT THE ACCUSER HAD RETRACTED HER RETRACTION.

{¶ 28} In his third assignment of error, Leach argues that the trial court erred by not issuing a limiting instruction after it sustained a hearsay objection to Ana's testimony that Emma had retracted her recantation of the rape accusation against Leach. Leach did not request such an instruction; therefore we review for plain error. "Plain error does not exist unless the error is obvious and but for the error, the outcome of the trial would

have been different." *State v. Warnock*, 2024-Ohio-382, ¶ 32 (12th Dist.). Emma's initial disclosures of being raped, made under the stress of the events that had just occurred, combined with the DNA evidence, established Leach's guilt beyond a reasonable doubt. Because of the overwhelming evidence supporting the convictions, a limiting instruction would not have changed the outcome of the trial.

{¶ 29} Leach's third assignment of error is overruled.

{¶ 30} Assignment of Error No. 4:

THE COURT ABUSED ITS DISCRETION BY DISALLOWING EVIDENCE OF PRIOR SEXUAL ACTS BY THE ACCUSER WHICH WERE INTENDED TO DEMONSTRATE THE ACCUSER'S PRIOR KNOWLEDGE OF THOSE SAME SEXUAL ACTS.

{¶ 31} In his fourth assignment of error, Leach argues that the trial court should have admitted evidence that Emma had witnessed cunnilingus and fellatio while watching a sexually explicit program on Netflix. Leach argues that this evidence would have demonstrated Emma's prior knowledge of the sexual acts she accused Leach of committing against her. We disagree.

{¶ 32} R.C. 2907.02(E) and (F) permit the trial court to determine the admissibility of evidence of any sexual activity of the victim after a hearing on the matter in chambers prior to, or for good cause shown, during trial. When evidence is offered to show a child's knowledge of sexual acts, its relevance depends on whether the prior sexual acts closely resemble the acts in question. *State v. Young*, 2009-Ohio-5354, ¶ 33 (8th Dist.). Where allegations of prior sexual acts are unsubstantiated or where the prior sexual acts are dissimilar to the allegations made against the defendant, such evidence is not probative or relevant. *See Id.* at ¶ 36-37.

{¶ 33} Emma's mother testified in an in camera hearing that she noticed on her Netflix account that someone had begun watching a sexually explicit program. She later

caught Emma watching the program on one occasion, and immediately stopped her. It could not be established how much of the program Emma had actually watched. Emma's mother separately viewed the first two episodes of the show, and testified that it depicted people naked on top of one another, but did not depict cunnilingus or fellatio.

**{¶ 34}** The trial court did not abuse its discretion when it disallowed this evidence because it could only be speculated as to how much of the program Emma had watched, and there was no indication that Emma witnessed cunnilingus or fellatio, therefore the evidence was not probative or relevant.

**{¶ 35}** Leach's fourth assignment of error is overruled.

**{¶ 36}** Assignment of Error No. 5:

> THE PROSECUTION ENGAGED IN MISCONDUCT DURING SENTENCING WHEN IT ARGUED THAT THE DEFENDANT HAD ENGAGED IN PRIOR SEX ACTS WITH THE MINOR, BASED SOLELY ON RUMOR AND SPECULATION OF THE MINOR'S FAMILY.

**{¶ 37}** During the sentencing hearing, the prosecutor advised the trial court that there was evidence that Leach had sexually abused Emma before based upon a phone conversation between Ana and Emma's Mother on the night of the incident. Emma's mother asked Emma if this had happened before, and Emma said yes. Leach did not object to these remarks. On appeal, Leach argues that these remarks were mere speculation and permitting them was plain error. Leach asserts these remarks led the trial court to impose a prison term of life without parole as opposed to life with parole eligibility after 15 years.

**{¶ 38}** Leach does not establish how these remarks are prosecutorial misconduct. The rules of evidence, including the rules on hearsay, do not apply to sentencing hearings. *State v. Bene*, 2006-Ohio-3628, ¶ 21 (12th Dist.). A trial court may properly rely on a broad range of information at sentencing. *State v. Clemons*, 2014-Ohio-4248,

¶ 7 (2d Dist.). Unindicted acts can be considered in sentencing without resulting in error when they are not the sole basis for the sentence. *Id.* In determining the sentence, the trial court specifically considered the seriousness of the offense and injury caused to Emma, noted that Leach's relationship with Emma and her grandmother facilitated the offense, and noted that it could not determine whether Leach had any genuine remorse. There is no indication that the court solely relied on the prosecutor's comment. We do not find the prosecutor engaged in misconduct during sentencing.

{¶ 39} Leach's fifth assignment of error is overruled.

### III. Conclusion

{¶ 40} For the reasons outlined above and finding no merit to any of Leach's five assignments of error, we affirm Leach's convictions for two counts of rape.

{¶ 41} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.